**United States Bankruptcy Court**
**Northern District of California**

In re:                                              Case No. 19-52440-SLJ
                                                    Chapter 11
    Paul Soares
_____/

**PROPOSED COMBINED PLAN OF REORGANIZATION**
**AND DISCLOSURE STATEMENT**
**DATED Jan. 19, 2021**

**INTRODUCTION**

    This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

    Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 100% of their allowed claims in monthly payments over 74 months commencing the 47th month after the Effective Date. Taxes and other priority claims would be paid in full, as shown in Part 3.

    Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [date]. The court will hold a hearing on confirmation of the Plan on [date] at [time].

    Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows Debtor's monthly income and expenses. Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan.

    Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney

to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

## PART 1: TREATMENT OF SECURED CREDITORS

**Debtor to Make Regular Payments and Pay Arrears Over Time.**

| Class | Name of Creditor | Collateral | Regular Monthly Payment | Est. Arrears | Term (mo.) | Int. Rate on Arrears | Monthly Pmt. on Arrears |
|-------|-----------------|-----------|------------------------|--------------|-----------|---------------------|------------------------|
| 1 | U.S. Bank N.A. as Trustee for the RMAC Trust, Series 2016-CTT (Rushmore Loan Management Service as servicer) | 416 Drake Ave. Monterey, CA | 3,240.25 | 179,674.21 | 120 | 0.00 | 1,497.29 |
| 2 | CA Dept. Tax & Fee Admin. | 416 Drake Ave. Monterey, CA | Incl. in Mortgage | 6,684.35 | 46 | 18 | 202.21 |

Debtor will pay the entire amount contractually due by

making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorney fees and late charges) in the number of equal monthly payments set forth in the table above at the rate of interest specified in the table, due the 1st day of the month, starting the month after the Effective Date of the Plan on the above secured claims.  To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the number of payments.  Only if the Class 1 claimant declines to escrow property taxes and insurance, debtor shall make all property tax payments and insurance payments by the delinquent date and maintain insurance on the Property. Creditors in these classes shall retain their interest in the collateral until paid in full.

Notwithstanding the above payment schedule, the revenue from any sale of his tax credits (debtor has $762,000 in unused tax credits, which after applying to any taxes owed will be sold with estimated proceeds of 40% of face value), or the revenue from any net recovery  from pending litigation (proceeds of litigation less attorney fees and costs less $10,000), shall be disbursed in the following order:

    1.    Payment of any outstanding administrative claims;
    2.    Pay off (or if insufficient funds for a payoff, pro-rata pay down to the extent of available funds) of the Class 1 and Class 2 claims;


Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **These secured claims are impaired and entitled to vote on confirmation of the Plan.**



**Debtor to Adjust Terms and Pay Amount Due in Full Over Time.**

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|-------|------------------|------------|------------|---------------|-----------------|------|
| 3 | Internal Revenue Service | Real Property and all Personal Property | 230,402.49 | 4.00 | 5,410.89 | 46 months |

| 4 | Franchise Tax Board | Real Property | 33,140.99 | 4.00 | 778.30 | 46 months |
|---|---|---|---|---|---|---|

Debtor will pay the entire amount contractually due with interest through 46 equal monthly payments, due the 1st day of the month, starting the month after the Effective Date on the above secured claims. Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

## PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS

## Class 5.  General Unsecured Claims.

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| Capital Accounts, LLC | 938.00 | N | 1069.43 | 14.45 |
| CMRE Financial Services | 176.00 | N | 200.71 | 2.71 |
| Cypress Collections | 82.00 | N | 93.61 | 1.26 |
| David Soares | 2,000.00 | N | 2,280.83 | 30.82 |
| Dayan Ninkovic | 950.00 | N | 1,083.63 | 14.64 |
| Julio Lopez | 120.00 | N | 137.22 | 1.85 |
| Kevin Emore | 1,000.00 | N | 1140.78 | 15.42 |
| Landon Beiter | 810.00 | N | 923.46 | 12.48 |
| Lynne Stoughton | 15,000.00 | N | 17,106.62 | 231.17 |
| Matthew Soares | 1,500.00 | N | 1710.44 | 23.11 |
| MSB | 995 | N | 1134.48 | 15.33 |
| Paul's Valley Bank | 0 | N | 0 | 0 |
| RC & Associates | 128.00 | N | 145.97 | 1.97 |
| RC & Associates | 4325.00 | N | 4,932.16 | 66.65 |
| Ryan Parker | 5,000.00 | N | 5702.45 | 77.03 |

| Shane Stoughton | 10,000.00 | N | 11404.17 | 154.11 |
|---|---|---|---|---|
| IRS | 2.89 | Y | 3.18 | .04 |
| Verizon | 565.30 | N | 644.96 | 8.72 |
| TOTAL | 43,591.19 | | 49,714.17 | 671.81 |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Percent Plan.** Creditors will receive 100 percent of their allowed claim in 74 equal monthly installments (as set forth in the table above) together with interest at 2% per annum, due on the 1st day of the month, starting the 47th month after the Effective Date. However, if debtor collects on any of his causes of action against third parties which net to debtor, after estimated taxes and attorney fees, if any, more than $10,000, after payment of administrative claimants and Class 1-2 claimants, any remaining amount shall be paid to the Class 5 creditors pro-rata to reduce the amount of their allowed claim, and accrued interest thereon. In such event payments as set forth in the table above shall continue until the allowed claim, including interest, is paid in full.

Similarly, any revenue from the sale of debtor's tax credits, after payment of administrative claimants and Class 1-2 claimants, any remaining amount shall be paid to the Class 5 creditors pro-rata to reduce the amount of their allowed claim, and accrued interest thereon. In such event payments as set forth in the table above shall continue until the allowed claims, including interest, are paid in full.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a)  Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| None | |
| | |

The following professionals have agreed to accept payment over time as follows.  Payments will be made monthly, due on the 1st day of the month, starting the month after the Effective Date or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| The Fuller Law Firm, P.C. | 20,000 | 500 | 40 |
| | | | |

The Kugelman firm employed to resolve debtor's federal tax liability is not being paid from estate funds. Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)  Other Administrative Claims.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| None | |
| | |

(c) <u>Tax Claims</u>.  Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code.  Payments will be made monthly, due on the 1st day of the month, starting the month after the Effective Date of the Plan.  To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| None | | | | |
| | | | | |

**PART 4:    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>.  Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder.  Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears will be paid in full on the Effective Date.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| None | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 5 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| None | |
| | |

(c) Residential month to month tenancies and Security Deposits. Debtor has residential leases with the following tenants:

| Tenant Name | Unit | Security Deposit |
|---|---|---|
| DiCarli | Unit 4 | $1,000 |
| Katu | Unit 5 | $1,000 |
| Jack McGuirre | Alley Suite | $1,000 |
| Landon Beiter | Garden Suite | $1,000 |
| Ehmsen | Margarets | $1,000 |

Debtor assumes all obligations under these leases and will disposition the security deposits on termination of the leases consistent with California State law.

(d) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed assumed.

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a) <u>Discharge</u>. Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) <u>Vesting of Property</u>. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code

free and clear of all claims and interests except as provided in
this Plan, subject to re-vesting upon conversion to Chapter 7 as
provided in Part 6(f) below.

(c)  <u>Plan Creates New Obligations</u>.  Except as provided in
Part 6(d) and (e), the obligations to creditors that Debtor
undertakes in the confirmed Plan replace those obligations to
creditors that existed prior to the Effective Date of the Plan.
Debtor's obligations under the confirmed Plan constitute binding
contractual promises that, if not satisfied through performance
of the Plan, create a basis for an action for breach of contract
under California law.  To the extent a creditor retains a lien
under the Plan, that creditor retains all rights provided by
such lien under applicable non-Bankruptcy law.


**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**
(a)  <u>Creditor Action Restrained</u>.  The confirmed Plan is binding
on every creditor whose claims are provided for in the Plan.
Therefore, even though the automatic stay terminates on the
Effective Date with respect to secured claims, no creditor may
take any action to enforce either the pre-confirmation
obligation or the obligation due under the Plan, so long as
Debtor is not in material default under the Plan, except as
provided in Part 6(e) below.

(b)  <u>Obligations to Each Class Separate</u>.  Debtor's obligations
under the Plan are separate with respect to each class of
creditors.  Default in performance of an obligation due to
members of one class shall not by itself constitute a default
with respect to members of other classes.  For purposes of this
Part 6, the holders of all administrative claims shall be
considered to be a single class, the holders of all priority
claims shall be considered to be a single class, and each non-
debtor party to an assumed executory contract or lease shall be
considered to be a separate class.

(c)  <u>Material Default Defined</u>.  If Debtor fails to make any
payment, or to perform any other obligation required under the
Plan, for more than 10 days after the time specified in the Plan
for such payment or other performance, any member of a class
affected by the default may serve upon Debtor and Debtor's
attorney (if any) a written notice of Debtor's default.  If
Debtor fails within 30 days after the date of service of the
notice of default either: (i) to cure the default; (ii) to
obtain from the court an extension of time to cure the default;
or (iii) to obtain from the court a determination that no

default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.


**PART 7: GENERAL PROVISIONS**
(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be

the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be returned to Debtor.

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Arrowhead Energy | N | Theft of oil from storage tanks on OK Land before foreclosure | $37,700 | Y; Not filed due to lack of money to prosecute |

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Estate of Raymond Hayes | N | Theft of mineral leases (top leases) | $250,000 | N (Dismissed without prejudice (could not locate estate) |
| As yet unidentified 3rd party | N | Theft of mineral leases on Kentucky Property | $150,000 | N (Dismissed without prejudice) |
| Deep Creek Energy, Dallas, TX | N | Theft of mineral leases | $250,000 | N; (Dismissed. Co Dissolved; won't purse) |
| Estate of Clyde Boyd | N | Collection under a lease/purchase real property contract. | $1,300,000 | Y; Appeal pending before 6th Cir. U.S. Court of appeals. Lower Court dismissed for lack of standing |
| East KY Excavation | N | Conversion and personal injury | $600,000 | N; Dismissed without prejudice |
| Thompson | N | Suit for unpaid rent | $4,000 | Y; Dismissed without prejudice (Defendant skipped) |
| Peck | N | Breach of contract for failure to perform legal services | $4,000 | Y; Pending; no trial date set |

(g)  Notices.  Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:
    Paul Soares
    416 Drake Ave. #1
    Monterey, CA 93940

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
July 30, 2012

Case: 19-52440   Doc# 72   Filed: 01/25/21   Entered: 01/25/21 17:59:42   Page 12 of 24

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j) <u>Feasibility</u>. Debtor contends that the plan is feasible.

A. Income will be derived from the following sources:

1. <u>Monthly Tenancies.</u>

Debtor's Property has ten rooms/suites. Seven are currently dedicated to monthly rentals. Two are dedicated to weekly rentals or short term rentals through AirBNB. One unit is occupied by the debtor. The monthly rents are as follows:

| Unit Description | Tenants | Fair Market Rental Value | Current rent | Scheduled Rent |
|---|---|---|---|---|
| Garden Suite | Beiter | $   800 | $   800 | $   800 |
| Unit 4 | DiCarli | $2,250 | $2,250 | $2,250 |
| Unit 5 | Latu | $1,650 | $1,650 | $1,650 |
| Unit 6 | Vacant | $2,250 | 0 | $2,250 |
| Alley Suite | McGuire | $ 800 | $   800 | $800 |
| Victorian | Vacant | $1,800 | $0 | $1,800 |
| Margarets | Ehmsen | $1,200 | $1,200 | $1,200 |
| Total | | $10,750 | $6,700 | $10,750 |

Three months historical data for the month to month tenancies was as follows:

| August | Sept | Oct | 3 mo average |
|---|---|---|---|

| 12150 | 7406 | 5050 | 8.202 |
|--------|------|------|-------|
|        |      |      |       |

However, historical data is an anomaly. In the post-Covid 19 era, tenants lost employment and struggled to meet rent obligations. This has now stabilized. However, two tenancies terminated in Oct. Tenants applied their security deposit to the October rent and the units became vacant in Nov. 2020. The units have once again been rented.


2.  Air BNB and Weekly Rentals

    In the post-petition pre-Covid months, AirBNB revenue was strong.  Covid-19 devastated debtor's AirBNB business:

| Jan. 2020 | Feb. 2020 | March 2020 | April 2020 | May 2020 | June 2020 | July 2020 |
|-----------|-----------|------------|------------|----------|-----------|-----------|
| $8,515    | $6,477    | 0          | 0          | 0        | 0         | 0         |
|           |           |            |            |          |           |           |


Debtor shifted rooms from AirBNB to rentals.  Now Air BNB revenue is returning. Further, in the last few months debtor has been able to generate some revenue from weekly rentals.  Recent data reflects the following income:


| August 2020 | Sept. 2020 | October 2020 | 3 month average | Projected |
|-------------|------------|--------------|-----------------|-----------|
| 1212        | 2,189      | 1,984        | $1,795          | $1,800 min.[1] |
|             |            |              |                 |           |

3.  Social Security Income

    Social Security income, except for nominal annual cost of living increases, is $628/mo.

4.  Vegetable Sales

    Debtor grows vegetable on the Property.  Vegetable sales were $1,186 in March 2020 for winter vegetables and ranged $780-$1,968 for August through October 2020.  However, debtor has now entered into a contract with Rising Goat Ltd. which will

---

[1] On Nov. 24, 2020, Debtor received a 2 week non AirBNB booking for $1,565.

Individual Chapter 11
Combined Plan & Disclosure Statement          (Version: 7/30/12)
July 30, 2012

generate $2,500/month in revenue throughout the year.

5.  Laundry Sales

    Historically laundry sales varied from $0 to $160/month. In Sept. 2020 these were $153. With increasing weekly and AirBNB occupancy, average sales are projected at $100/month.

6.  Sale of tax credits

    Debtor has $762,000 in tax credits. He anticipates using those credits to offset the $230,402 tax liability asserted by the IRS in its proof of claim filed in the herein case. Tax counsel has been employed by order entered on Nov. 23, 2020. Tax credits have a market. Debtor is informed that these credits can be sold at a 60% discount from face value. Moss Adams, an accounting and consulting firm represents clients in such sales. Hence, Debtor anticipates generating $212,639 in cash.  Debtor will use the proceeds of sale to pay down claims in the following order:
    1.  Administrative claims
    2.  Class 2 (CA Tax Fee administration for Property taxes)and U.S. Bank  (Rushmore) pre-petition mortgage arrears payable pro-rata as to the allowed claims;
    3.  The balance, if any paid pro-rata to allowed general unsecured claims

7.  Outside Support

    Debtor has a good friend Ryan Parker that is prepared to assist Debtor to succeed in his Chapter 11 Plan. To the extent necessary to fund his plan, Ryan Parker is prepared to contribute not more than $5,400/month.  He is employed as a CEO currently earning $9,875/month.  His house is paid off so he has limited living expenses. The contribution does not require repayment.

8.  Recovery from litigation

    As set forth in Part 7, Section "f" above, Debtor has litigation pending.  The amount and timing of any recovery from the litigation is unknown at this time. Any net recovery less $10,000, however, is to be distributed in the same manner as any net recovery from the sale of tax credits set forth in section 6 immediately above.

B.  The following expense reductions are anticipated to promote

feasibility.

     1.   <u>Property tax reduction</u>.  Property taxes, currently at $2,352.28/month are expected to decrease by 40% in 2020 based on Mills Act designation effective in Feb 2021.

     2.   <u>Claim forgiveness</u>.  Eight individual general unsecured creditors with claims of $26,380 are considering forgiving their claim if necessary to allow for plan feasibility. If it materializes this would reduce plan payments in months 47-120 by about $400/month.

Dated: Jan. 20, 2021

                              /s/ Paul Soares
                              Debtor

                              _____
                              Debtor

                              /s/Lars T. Fuller_____
                              Attorney for Debtor

Case: 19-52440   Doc# 72   Filed: 01/25/21   Entered: 01/25/21 17:59:42   Page 16 of 24

**Attorney Certification**

I, Lars T. Fuller, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

Page 2: Added a column for loan term and interest rate in the table.

Page 3. As to the Class 1 Claimant. Added a provision that provides "Only if the Class 1 claimant declines to escrow property taxes and insurance, debtor shall make all property tax payments and insurance payments by the delinquent date and maintain insurance on the Property."

Further, added additional language as to the accelerated pay down of the claim.

Page 7: Added a new Paragraph c to address existing residential tenancies.

Page 12. Added a Feasibility paragraph.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jan. 19. 2021,

_/s/Lars T. Fuller_

Attorney for Debtor

Case: 19-52440   Doc# 72   Filed: 01/25/21   Entered: 01/25/21 17:59:42   Page 17 of
                                        24

**Exhibit 1 - Events That Led To Bankruptcy**

Debtor is the owner of his residence at 416 Drake Ave. Monterey, CA ["Property]. The Property, built in 1903, consists of approximately 9,000 square feet of space and 10 suites. Debtor resides in one suite. Seven suites are rented month to month. Two suites are rented through AirBNB or as non- AirBNB weekly rentals. Since the Property is designated as a historical building by the City of Monterey, it is an attractive Air BNB rental.

Debtor has litigation pending in Oklahoma for misappropriation of oil and gas leases. He diverted available funds to investigate and prosecute the litigation and hence fell behind on his mortgage payments to Rushmore Loan Management Services, the servicer of the 1st note.

Debtor filed the instant case to stay a foreclosure sale of the Property.

Most of Debtor's income is rents which are the cash collateral of U.S. Bank (serviced by Rushmore Loan Management Services, LLC), the holder of the 1st trust deed on the Property. Debtor filed a motion for use of cash collateral on shortened time. Debtor and Rushmore Loan Management Services, LLC entered into a stipulation for use of cash collateral on Jan. 8, 2020.

Post-petition, with the onset of Covid-19, debtor lost all of his AirBNB business and monthly tenants had difficulty meeting rent obligations. Debtor has turned that situation around by converting Air BNB units to monthly rentals, attracting non-AirBNB weekly rentals and growing his vegetable sales business.

Because of the Pandemic, debtor applied for a mortgage forbearance with Rushmore Loan Management Services, LLC. A Notice of Forbearance Agreement was filed in the herein case on June 11, 2020 as Docket No. 47.

Debtor contends that because of oil and gas loss carryforwards and credirs, he does not owe any taxes to the IRS. The IRS however, filed a claim for $230,405.38. The undersigned urged debtor to identify tax counsel with experience in tax relating to oil and gas. Debtor unsuccessfully tried to contact the IRS for resolution. On Nov. 16, 2020, an application to employ the Kugelman firm as tax professional was filed and an order

approving the employment was entered on Nov. 23, 2020.

    The tax claim and the pandemic impact made it difficult for debtor to propose a timely plan. On Sept. 3, 2020 the Court issued an order that debtor's plan be confirmed by Jan. 14, 2021. Debtor obtained a commitment for outside support in the event the tax claim is not resolved and restricted his business to address the pandemic impact on revenue.  Set concurrent with the hearing for approval of the disclosure statement is debtor's motion to extend the deadline to confirm.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 416 Drake Ave. Monterey, CA

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 2,600,000[2] | 1st 2,152,076.21 | 156,000 | 0 | 175,000 | 0 |
| | 2nd CATFA $6,684.35 | | | | |
| | 3rd IRS (Lien 1-11-16) $230,402.49 | | | | |
| | 4th FTB (Liens 5-28-2015 & 6-7-2018) $33,140.99 | | | | |

Personal Property:

| Description | Liquidation Value | Secured Claim[3] | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | 2,166.30 | 0 | 0 | 2,166.30 |
| Household Furnishings | 6,275 | 0 | 6,275.00 | 0 |
| Jewelry | 500.00 | 0 | 500.00 | |
| Stocks / Investments | 295,000 | 0 | 0 | 295,000 |
| Ins. Proceeds held by Rushmore | 9,500.00 | 0 | 0 | 9,500 |
| Unapplied suspense funds held by Rushmore | 3,500 | 0 | 0 | 3,500 |
| Claims and causes of action against 3rd parties | 2,698,200 | 0 | 0 | 2,698,200 |
| Horse, 2 dogs, 2 cats | 1,000 | 0 | 0 | 1,000 |
| Market Value of Tax Credits | 304,800 | 0 | 0 | 304,800 |
| TOTAL | | | | 3,314,166 |

| Net Proceeds of Real Property and Personal Property | 3,314,166 |
|---|---|

---

[2] Represents debtor's opinion of value. Zillow.com values the property at $3,058,999 but notes that data is incomplete.
[3] All assets are subject to the IRS lien. However, the lien is fully secured by the equity in the real property. Hence, it is not shown as a secured claim against personal property for purposes of the liquidation analysis

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
July 30, 2012

| | | |
|---|---|---|
| Recovery from Preferences / Fraudulent Conveyances [ADD] | 0 | |
| Chapter 7 Administrative Claims [SUBTRACT] | 122,674 | |
| Chapter 11 Administrative Claims [SUBTRACT] | 20,000 | |
| Priority Claims [SUBTRACT] | 0 | |
| Chapter 7 Trustee Fees [SUBTRACT] | 0 | |
| Chapter 7 Trustee's Professionals[4] [SUBTRACT] | 200,000 | |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | 2,971,491 | |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 43,591.19 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |

## Exhibit 3 - Monthly Income and Expenses

| Income | Amount (Mo 1-46) | Amount (Mo 47-120) |
|---|---|---|
| Gross Employment Income | | |
| Gross Business Income-Leased units | 10,750 | 10,750 |
| Gross Business Income – Air bnb & weekly | 1,800 | 1,800 |
| Gross Business Income- vegetable sales | 2,500 | 2,500 |
| Gross Business Income – laundry | 100 | 100 |
| Social Security | 628 | 628 |
| Outside support (if required to fund plan) | $5,400 | 0 |
| **A. Total Monthly Income** | 21,178 | 15,778 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount | |
|---|---|---|
| Business Expenses (before mortgage)[5] | 5,583.33 | 5,583.33 |
| | | |
| Payroll Taxes and Related Withholdings | 0 | 0 |

---

[4] To litigate claims against third parties
[5] Represents 6 month average expenses

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
July 30, 2012

Case: 19-52440    Doc# 72    Filed: 01/25/21    Entered: 01/25/21 17:59:42    Page 21 of 24

| Shelter Expenses (mortgage $3,240.25, insurance $249), property taxes $2,352.28, (Total Arrearages on Principal Residence are $_174,731.46) | 5,841.53[6] | 5,841.53 |
| Personal Living Expenses[7] | 1,348 | 1,348 |
| | | |
| **B. Total Monthly Expenses** | 12,772.86 | 12,772.86 |

| **C. Disposable Income** (Line A - Line B) | 8,405.47 | 3,005.47 |

| **Plan Payments** Plan Payments Not Included in Calculating Disposable Income | Amount (Mo. 1-46) | Amount (Mo. 46-120) |
| --- | --- | --- |
| Administrative Claims | 500.00 | 0 |
| Priority Claims | 0 | 0 |
| Class 1- U.S. Bank N.A. as Trustee for the RMAC Trust, Series 2016-CTT (Rushmore Loan Management Service as servicer) | 1,497.29 | 1,497.29 |
| Class 2 - CA Tax and Fee Admin (Property taxes) | 202.21 | 202.21 |
| Class 3 - IRS | 5,410.89 | 0 |
| Class 4 - FTB | 770.02778.30 | 0 |
| General unsecured | 0 | 671.81 |
| **D. Total Plan Payments** | 8,388.69 | 2,371.31 |

| **E. Plan Feasibility** (Line C - Line D) (Not feasible if less than zero) | 16.78 | 634.16 |

[6] Before projected $940 reduction in Mills Act property tax reduction
[7] Represents last 3 month average

Individual Chapter 11
Combined Plan & Disclosure Statement　　　　　　　　(Version: 7/30/12)
July 30, 2012

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | 6,785[8] |
| Payments on Effective Date | | |
| Unclassified Claims | 0 | |
| Administrative Expense Claims | 0 | |
| Priority Claims | 0 | |
| Small Claims (Class 2(a)) | 0 | |
| U.S. Trustee Fees | 650 | |
| B. Total Payments on Effective Date | | 650 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | | 6,135 |

[8] Based on latest MOR

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
July 30, 2012

Case: 19-52440   Doc# 72   Filed: 01/25/21   Entered: 01/25/21 17:59:42   Page 23 of 24

(Version: 7/30/12)